UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


JUNE PITMAN                              CIVIL ACTION


VERSUS                                   NO: 13-83


CRANE CO., *ET AL*.                      SECTION: R(5)

## ORDER AND REASONS

Before the Court is June Pitman's motion to remand and Georgia-Pacific, L.L.C.'s ("Georgia-Pacific") motion for limited discovery on the issue of improper joinder.[1] For the following reasons, Pitman's motion to remand is GRANTED, and Georgia-Pacific's motion is DENIED.

**I.    BACKGROUND**

On March 1, 2012, doctors diagnosed June Pitman with mesothelioma. Pitman alleges that asbestos exposure caused her disease. She claims that her father carried asbestos fibers home from work in his clothing and exposed her. In state court, Pitman brought strict liability and negligence claims against asbestos-products manufacturers, suppliers, and installers allegedly

---

[1]    R. Doc. 6; R. Doc. 18.

responsible for exposing her and her father to asbestos. Defendant, Georgia-Pacific removed the case to federal court.[2]

Pitman moves to remand, contending that incomplete diversity of the parties renders this Court without subject matter jurisdiction.[3] Indeed, it is undisputed that Pitman, along with defendants Eagle Incorporated ("Eagle") and Taylor-Seidenbach ("Taylor") are Louisiana citizens for jurisdictional purposes. Removing defendant Georgia-Pacific argues that diversity remains incomplete because Pitman improperly joined Eagle and Taylor, and that their citizenship is inconsequential in the Court's jurisdictional analysis.[4]

## II.  REMAND BASED ON LACKING DIVERSITY JURISDICTION

### A.  IMPROPER JOINDER STANDARD

Plaintiff's remand motion is governed by the standard for improper joinder, as set forth below.

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing  party bears the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by

---

[2]     R. Doc. 1.

[3]     R. Doc. 6.

[4]     R. Doc. 1.

2

the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, 1995 U.S. Dist. LEXIS 10227 (E.D. La. 1995). Though the Court must remand to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed at of the time of removal. 28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants. *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Here, the parties do not dispute that the amount-in-controversy requirement is met, but they disagree about whether the complete diversity requirement is satisfied. Indeed, Pitman, Taylor, and Eagle have Louisiana citizenship, which would ordinarily destroy complete diversity. *See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). And when a nondiverse party is properly joined as a defendant, no defendant may remove the case under 28 U.S.C. § 1332. But a defendant *may* remove by showing that the nondiverse party was joined

3

improperly. *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003).

The burden of demonstrating improper joinder is a heavy one, as the doctrine is a narrow exception to the rule of complete diversity. *Smallwood*, 352 F.3d at 574. A defendant may establish improper joinder by showing either (1) actual fraud in pleading jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant. In this case, there is no claim that plaintiff fraudulently pleaded jurisdictional facts; accordingly, only the second type of improper joinder is at issue. The test for fraudulent joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* at 573.

In analyzing whether a plaintiff has demonstrated a reasonable possibility of recovery, the district court may "'conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.'" *Menedez v. Wal-Mart Stores, Inc.*, 364 Fed. App'x 62, 69 (5th Cir. 2010) (per curiam) (quoting *Smallwood*, 385 F.3d at 573).

4

The scope of the inquiry for improper joinder, however, is even broader than that for Rule 12(b)(6) because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for his or her claim. *Smallwood*, 352 F.3d at 223 n.8 (citing *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003)). *See also Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). In conducting this inquiry, the Court must "take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. So, too, must the Court resolve all ambiguities of state law in favor of the nonremoving party. *Id.*

**III. DISCUSSION**

Defendant attacks plaintiff's joinder of Taylor and Eagle in two ways. First, it argues that plaintiff's complaint would not survive a motion to dismiss. Second, it argues that there is no reasonable basis for the Court to predict that plaintiff might recover against the in-state defendants. *Smallwood*, 385 F.3d at 573. Both arguments fail.

**A.   A 12(B)(6)-TYPE INQUIRY REVEALS A REASONABLE BASIS FOR RECOVERY**

In its notice of removal, Georgia-Pacific asserts that "[p]laintiff failed to assert *any* specific factual allegations

against Eagle or Taylor Seidenbach in her Petition."[5] This is the extent of Georgia-Pacific's argument that plaintiff's complaint fails under Rule 12(b)(6); its brief does not expand on the point.

Georgia-Pacific's choice to all but abandon this argument is understandable; plaintiff's petition does allege facts implicating Eagle and Taylor. Plaintiff's petition alleges that "Ms. Pitman was exposed to asbestos in Orleans Parish while her father, Henry Price, performed construction work at the family residence in New Orleans, various construction sites in the New Orleans area, and the New Orleans Masonic Temple in New Orleans, Louisiana."[6] Plaintiff further alleges that all defendants, including Eagle and Taylor, produced, sold, manufactured, distributed, or utilized the asbestos-containing products that caused her exposure.[7] If a plaintiff proves that certain products were "unreasonably dangerous *per se*, a manufacture may be held liable for injuries caused by that product, although the manufacturer did not know and reasonably could not have known of the danger." *Adams v. Owens-Corning Fiberglass Corp.*, 923 So. 2d 118, 122-23 (La. Ct. App. 2005) (explaining the strict products liability standard for asbestos claims against manufacturers when

---

[5]    R. Doc. 1 at 4.

[6]    R. Doc. 6-5 at 2.

[7]    *Id.* at 3-4.

the alleged exposure occurred before the enactment of the Louisiana Products Liability Act). Plaintiff's complaint adequately alleges that defendants' products contained asbestos and were unreasonably dangerous, unreasonably dangerous *per se*, and unreasonably dangerous for failure to include a warning about the dangers of asbestos exposure.[8]

Further, plaintiff alleges that defendants' negligent conduct, including failing to warn about the dangers of asbestos exposure, caused her injuries.[9] *See Adams*, 923 So. 2d at 123 (explaining that non-manufacturers and sellers of asbestos products are potentially liable in tort if they knew or should have known that the product was defective and failed to declare the defect to the purchaser). Accordingly, plaintiff has stated a reasonable basis for relief.

**B.  PIERCING THE PLEADINGS REVEALS A REASONABLE BASIS FOR PLAINTIFF'S RECOVERY**

"Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573. Even so, district courts may "pierce the pleadings and conduct a summary inquiry" before slamming the door on a claim of improper joinder. *Id*. In cases in which a plaintiff has "stated a claim but misstated or omitted discrete facts that would

---

[8]     *Id.* at 4.

[9]     *Id.* at 5.

7

determine the propriety of joinder," a summary inquiry might be useful. *Id.* Importantly, the summary inquiry is "appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.*

Georgia-Pacific asks this Court to pierce the pleadings and assess the sufficiency of plaintiff's evidence at this early stage in the litigation. Noting that a plaintiff in an asbestos case must show "that he was exposed to asbestos from the defendant's products and that he received an injury that was substantially caused by that exposure," *Adams*, 923 So. 2d at 122, Georgia-Pacific argues that plaintiff cannot prove a connection between the in-state defendants' products and her father's exposure.

Plaintiff's theory is that Eagle was the sole distributor of some of Pabco Engineering's ("Pabco") asbestos-containing products,[10] that her father was exposed to Pabco products, specifically, insulating cement, and that she was exposed to her father's asbestos-carrying clothes.

Piercing the pleadings, even at this stage, reveals a possibility that plaintiff's claims have merit. Plaintiff has provided an agreement between Eagle and Pabco granting Eagle

---

[10]    R. Doc. 6-3 at 11; R. Doc. 6-8.

exclusive distribution rights over certain Pabco products.[11] This agreement connects Eagle to Pabco's products. Further, plaintiff's brother, Arthur Price, has provided an affidavit asserting that he worked with Pitman's father and "recall[ed] bags of Pabco Insulating Cement while working with [him]."[12] This is evidence that Pabco products were present at plaintiff's father's work site. Combined, these two pieces of evidence provide a potential link between Eagle and asbestos-containing products at plaintiff's father's work sites.

Georgia-Pacific's burden is to "put forward evidence that would negate a possibility of liability on the part of [the in-state defendant]." *Travis*, 326 F.3d at 650. Georgia-Pacific fails to carry this heavy burden because its arguments only cast doubt on plaintiff's eventual recovery against Eagle. It has not submitted evidence demonstrating no possible recovery.

Georgia-Pacific first argues that the distribution agreement between Eagle and Pabco Engineering does not cover insulating cement. Instead, the agreement lists "Pabco PRECISION MOLDED 85% Magnesia Insulation Prasco High Temperature Insulation and Caltherm Insulations,"[13] as the subject of the agreement. Putting aside the fact that there is no evidence in the record explaining

---

[11]    R. Doc. 6-8.

[12]    R. Doc. 6-9 at 1.

[13]    R. Doc. 6-8 at 4.

what these industry terms mean, Georgia-Pacific makes the mistake
of arguing that the distribution agreement and Price's affidavit
will be the *only* evidence plaintiff relies on at trial. The
agreement is evidence that dating back to the 1950s, Eagle was an
exclusive distributor of certain Pabco asbestos-containing
products. Price's affidavit is evidence that there were Pabco
products at Pitman's father's work site. Discovery will be used
to flesh out the relationship between Pabco and Eagle. For
instance, discovery could reveal that plaintiff's father was
exposed to other Pabco products listed in the agreement, or under
some other agreement with Eagle. At this stage of the case it is
too early to tell. Accordingly, the agreement is not evidence
that precludes Pitman's recovery against Eagle.

Next, Georgia-Pacific argues that plaintiff's deposition
establishes that her father did not work at any industrial sites.
In her deposition, plaintiff stated that she "did not know" what
other sites her father worked besides the Masonic Temple.[14]
Plaintiff's testimony does not definitively establish that her
father did not work at industrial sites; whether he worked at
industrial sites remains neither established nor refuted.
Further, Georgia-Pacific does not explain why it would negate
plaintiff's case against Eagle if her father did not work at
industrial sites. Evidence on this point does not negate the

---

[14]    R. Doc. 6-7 at 6.

validity of plaintiff's evidence showing that there were Pabco
products present at one of his work sites, industrial or
otherwise.

Georgia-Pacific's argument that plaintiff has not produced
"one scintilla of evidentiary support" suggesting that
plaintiff's father worked at industrial sites is inapposite.[15] In
*Bradford v. McCarty Corp.*, No. 08-746-JVP-SCR, 2009 WL 667175
(M.D. La. Mar. 12, 2009), the court remanded a case in which
defendant did nothing more than point out flaws in plaintiffs'
evidence: "Simply pointing to the plaintiffs' lack of evidence at
this early stage of the case is insufficient to show that there
is no possibility that the plaintiffs will be able to establish
the liability of the non-diverse defendants at trial." *Bradford*,
2009 WL 667175, at *2.

Further, in *Richoux v. CSR Ltd.*, No. 08-931, 2008 WL 576242
(E.D. La. Feb. 29, 2008), the Court remanded a case where
"plaintiff testfie[d] only that he, a lifelong office worker, has
no *personal* knowledge or information that the non-diverse
defendants supplied, installed, or distributed the asbestos-
containing products that he may have been exposed to during the
course of his life." *Richoux*, 2008 WL 576242, at *4. Improper
joinder was not established by pointing to this deposition
because the deposition was "far from the only type of evidence

---

[15]    R. Doc. 20 at 15.

after discovery, that the plaintiff might be able to produce at trial." *Id.*

Georgia-Pacific attempts to distinguish these cases by suggesting that unlike *Bradford* and *Richoux*, Pitman appeared to have no "additional leads which could be pursued to identify any evidence against Eagle or Taylor."[16] But Pitman need not rely only on her deposition testimony and her brother's affidavit at trial. Instead, discovery has just begun; she has yet to depose her father's coworkers or the defendants' corporate representatives.[17] Accordingly, Georgia-Pacific's attempts to distinguish these cases are unavailing.

Finally, Georgia-Pacific attacks Arthur Price's affidavit because "[r]ecalling bags of a product simply does not establish exposure to that product."[18] Again, this argument is misguided. Whether plaintiff will eventually win is beside the point. *See Travis*, 326 F.3d at 651 (noting that when discovery was ongoing "simply pointing to the plaintiff's lack of evidence at this stage of the case is insufficient" to establish improper joinder). At this stage of the litigation plaintiff is not expected to produce evidence sufficient to survive a motion for summary judgment; she must only show a "reasonable basis for the

---

[16]    R. Doc. 20 at 12.

[17]    R. Doc. 6-3 at 10.

[18]    R. Doc. 20 at 8.

district court to predict that the plaintiff might be able to recover." *Smallwood*, 385 F.3d at 573; *see also Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308-09 (5th Cir. 2005) (explaining "[w]e do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so"). Accordingly, Price's affidavit does not conclusively prove plaintiff's claim against Eagle, but it does help defeat defendants' claim that plaintiff improperly joined Eagle. Accordingly, piercing the pleadings does not reveal plaintiff's joinder to be improper.

## C.   LIMITED DISCOVERY WILL NOT REVEAL DISCRETE DISPOSITIVE FACTS

Georgia-Pacific also moves this Court to delay deciding plaintiff's motion to remand and to provide for limited discovery on the issue of improper joinder. In *Smallwood*, the Fifth Circuit cautioned that "a summary inquiry is appropriate only to identify the presence of discrete and *undisputed* facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74 (emphasis added). The Court gave examples of when this procedure would be appropriate: "For example, the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." *Id.* at 574 n.12.

This case is not suited for a further discovery on improper joinder. Georgia-Pacific wishes to depose plaintiff's brother to cross-examine him about his affidavit and to depose Eagle "to establish whether or not Eagle supplied Pabco Insulating Cement to any worksite where Mr. Price worked."[19] Since there is already evidence in the record linking Eagle to Pabco, and Pabco's products to plaintiff's father, defendant's proposed discovery would not easily disprove an essential fact. Defendant also assumes plaintiff will not come forward with additional evidence in discovery. *See also Richoux*, 2008 WL 576242, at *5 (declining to allow for additional discovery because "[a]llowing additional discovery in federal court at this point, *in order that the defendant be afforded an opportunity to meet its removal burden* ... would take this Court well beyond its role in determining jurisdiction, and into the merits of the case"). Further discovery is inappropriate in this instance.

Accordingly, Georgia-Pacific has not met its heavy burden to establish improper joinder of the in-state defendants, and additional discovery would not bring its allegation of improper joinder back to life. There is not complete diversity of citizenship between the parties and this Court has no jurisdiction over this matter.

---

[19]    R. Doc. 18-1 at 4.

14

**IV.   CONCLUSION**

Accordingly, plaintiff's motion to remand is GRANTED, and defendant's motion for limited discovery is DENIED. This matter is hereby REMANDED to the Civil District Court for the Parish of Orleans, State of Louisiana, for further proceedings.


New Orleans, Louisiana, this <u>5th</u> day of April, 2013.


SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

16